IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO. 8:18-cv-00171-T-30SPF

JENNIFER FARLEY,

        Plaintiff,

-v-

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, a foreign corporation
authorized to do business in the
state of Florida,

        Defendant.
_____/

## PLAINTIFF'S, JENNIFER FARLEY, RESPONSE AND OBJECTION TO DEFENDANT'S, STATE FARM, MOTION IN LIMINE ON THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES

Plaintiff, JENNIFER FARLEY ("Plaintiff"), by and through her undersigned counsel files this Response and Objection to Defendant's, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("Defendant"), Motion in Limine on the Testimony of Plaintiff's Expert Witnesses, and would state as follows:

On October 22, 2019, Defendant filed its Motion in Limine seeking to limit the testimony of Plaintiff's expert witnesses, Steven Collard, M.Ed. ("Collard"), and Michael Freeman, MedDR PhD MPH FAAFS ("Freeman"). Review the Motion reveals that the Defendant seeks to limit testimony pursuant to a Daubert Motion, although not specifically identified as such by the Defendant. This Court, thru its case Second Amended Case Management and Scheduling Order, established that Daubert Motion's must be filed by July 26, 2019. As such, the Defendant is almost four months past the deadline to file this Motion. Therefore, this Court should deny the Defendant's

Motion on that basis alone. Beyond that, and as discussed below, this Court should deny Defendant's Motion for substantive reasons as well.

## STEVEN COLLARD

Collard is a forensic vocational economist. He has Bachelor's Degree in Psychology and a Master's Degree in Educational and Counseling Psychology with an emphasis in vocational counseling. (See CV attached as "Exhibit A", and Collard Depo 8:2-3). Collard has over 25 years experience in the field of vocational economics. (See Collard CV). Collard spent two and half years working at Vocational Economics where he worked on over a thousand cases as a vocational economic evaluator, and even began training consultants. (Collard Depo 9:6-9). Collard has also worked for the US Department of Health and Human Services as a vocational expert where he was "contracted to provide vocational testimony in disability hearings. Testimony based on the claimant's age, education, previous work experience, and review of *medical evidence* as it relates to the claimant's exceptional capabilities." (Collard CV *emphasis added*.) Further, Collard has been accepted by courts as an expert vocational expert in the past. (See Depo Trial List attached as "Exhibit B"). The evidence is unequivocally clear that Collard is qualified to offer expert opinions in the field of vocational economics.

Collard is offering opinions regarding how this collision effected Plaintiff's loss of earning in the past, and expected loss of earnings in the future. In doing so, Collard reviewed many records, including by not limited to, Plaintiff's medical records and income records. Collard also conducted an interview with Plaintiff to further learn directly from her how this accident has effected her daily life and how that impact her work. Review of the medical records and Plaintiff's subjective symptoms are a necessary component for Collard to determine whether Plaintiff has an occupational disability based on literature, such as, National Health Interview Survey, and the US Department of

Commerce. (See Collard Report, and "Sources" attached at "Exhibit C"). It is also necessary for Collard to consider the medical evidence and Plaintiff's subjective symptoms to determine the extent of her occupational disability.

While Collard is not diagnosing Plaintiff with certain medical conditions, he is considering the medical evidence, including that of the diagnoses from her treating physicians, and he is considering Plaintiff's subjective reports on how this accident is effecting her on a daily basis. Collard relies on this evidence to form his opinions. This falls squarely in Collard's field of expertise, and he should be permitted to testify so such evidence, as he has been qualified to do so in the past.

There has been no suggestion from the Defendant that Collard did not follow an appropriate methodology. The Defendant seems to be focused on the act that Collard is not a clinical psychologist and has not medical training (as a reminder Collard does has a Master's Degree in Educational and Counseling Psychology with an emphasis in vocational counseling). Again, as mentioned above, Collard is testifying from a vocational expert standpoint, and relying on such data is a necessary and accepted part of his profession. The issues raised by the Defendant can be addressed on cross examination, but would not be grounds for exclusion.

Therefore, this Court should deny Defendant's Motion regarding Collard.

## MICHAEL FREEMAN

In paragraphs 2 and 3 of the Defendant's Motion, the Defendant seemingly challenges Freeman's qualifications and Injury Causation Analysis. To begin with, Freeman has significant amount of education, training, and experience to qualify him to offer opinions in the field of accident reconstruction and injury causation. Freeman has a bachelor's degree from the University of Oregon in general science that covers chemistry, physics, and biology. (Freeman Depo 11:23-12:1). He is

a current licensed chiropractor. He has a Masters in Public Health Epidemiology and Biostatistics. He has a PhD in epidemiology with a focus in traffic accident related injuries. (Freeman Depo 12:9-10). Freeman attended three years of medical school, which he stopped because he didn't want to do clinical practice. (Freeman Depo 12:10-13, 12:21-13:3). He also obtained a degree in Sweden as a Doctor of Medicine which Freeman describes as a non clinical medical degree, followed by a 2 year of postdoctoral fellowship in forensic pathology. (Freeman Depo 12:14-19). Licensed in the state of Oregon to perform surgeries, and trained to make medical diagnosis (Freeman Depo 13:24-14:8). Freeman also extensive background in engineering in the field of crash reconstruction and injury biomechanics (Freeman Depo 14:22-15:2, 23:12-24:2), including developing the curriculum on injury and trauma epidemiology, with approximately a third of that curriculum being devoted to injury biomechanics, and taught that curriculum for 14 years at the Orgeon Health Science University Medical School. (Freeman Depo 15:3-17). Further, he has hundreds of hours of training in biomechanics and injury biomechanics (Freeman Depo 18:8-10). He is also a tenured Professor at Maastricht University in area of Foresnsic Science and runs a PhD program for physicians who are studying in the field of forensic medicine. (Freeman Depo 5:10-19) (Freeman explains the broad definition of forensic medicine is the "intersection of medicine and law." Freeman Depo 5:20-22). Also and affiliate of the Allegheny County medical examiners office where is requested to come to opinions on causes of death in pediatric death case or traffic homicide. (Freeman 21:16-23:2).

      Freeman has over 60 scientific papers in the field of injury biomechanics, all of which have been peer reviewed. (Freeman Depo 24:3-11). Further, Freeman has been accepted as an expert and provided testimony in "more than 350 civil and criminal trials in state and Federal Courts throughout the United States, Canada, and Australia. (Freeman Report "Exhibit D"). Additionally, Freeman's 3-step injury causation methodology has been subjected to and accepted by peer review, and has

been accepted by other courts.  (Etherton v. Owners Insurance Co., 35 F. Supp.3d 1360 (D. Colo. 2014); Taylor v. Royal Caribbean Cruises, Ltd., 18-cv-24093 (Florida Southern District 10/24/19).

In Florida "a witness is qualified as an expert by knowledge, skill, experience, training *or* education.  Fla. Stat. 90.702 (2019)(*emphasis added*), See Fed. R. 702 (2019).  As can be seen, Freeman more than qualified to offer opinions regarding injury causation, recently confirmed in an order issued in the Southern District of Florida.  Taylor v. Royal Caribbean Cruises, Ltd., 18-cv-24093 (Florida Southern District 10/24/19) (See Freeman's CV attached as "Exhibit E", and Freeman's Report for a more comprehensive account of Freeman's background).  Whether Freeman is a license medical doctor or a clinical medical doctor is not determinative.  See Seaboard Ariline Railroad Co.v. Lake Region Packing Association, 211 So.2d 25 (4th DCA 1968); State v. Darling, 808 So.2d 145 (Fla. 2002); Brown v. State, 477 So.2d 609 (4th DCA 1985); Hudson v. State, 844 So.2d 762 (Fla. 5th DCA 2003).

Freeman was retained by Plaintiff to determine the veracity of the opinions offered by Defendant's biomechanical expert, Rawson Wood, and if necessary, to offer rebuttal testimony.  As can be seen by Freeman's report, deposition ,and Plaintiff's Motion to Exclude the Testimony of Rawson Wood, Freeman's testimony and opinions will be necessary to rebut the testimony of Wood.

The Defendant's motion mischaracterizes Freeman's methodology as an injury causation using population based approach relying "substantially, if not entirely, upon Farley's medical records."  This statement seems to ignore Freeman's 19 page report and 45 pages of deposition testimony describing the 3-step injury causation method utilized by Freeman and all of the information Freeman considered in reaching his conclusions. (See Freeman's Report and Freeman Depo 41:14-86:20).

Freeman's 3-step injury causation method is:

1. Whether the injury mechanism had the potential to cause the injury in question (aka general causation);

2. The degree of temporal proximity between the injury mechanism and the onset of symptoms reasonably indicating the presence of the injury; and

3. Whether there is a more likely alternative explanation for the occurrence of the symptoms at the same point in time (a/k/a differential etiology). (See Freeman's Report page 8 of 19).

This exact 3-step injury causation method recently accept by the Southern District of Florida. See Taylor order; see Etherton, 35 F. Supp.3d 1360.

Following this method, Freeman considered a significant amount of data to reach his conclusions, including but not limited to what we known about Plaintiff's physical condition before the accident, what occurred in the accident, the diagnosis of from her treating physicians, the temporal relationship between the time of the accident and Plaintiff's symptoms, and data known about the risk of injury to other people like Plaintiff involved in a collision similar to the one that is the subject of this litigation (i.e. comparing the frequency of injury in a collision like this as reported in the National Automotive Sampling System-Crashworthiness Data Sample and determined this collision was one with very high risk of injury (Freeman Depo 70:15-74:6)) (Freeman Depo 85:4-86:8). The fact that Freeman did not examine the Plaintiff, as pointed out by the Defendant, is not a necessary component for Freeman to reach his conclusions following the 3-step injury causation methodology. In all fairness, it should also be pointed out that Defendant's biomechanical expert, Wood, also did NOT examine Plaintiff either. Freeman's report and deposition prove Freeman relied on much more that just medical records, as suggested in the

Defendant's Motion. In fact, Freeman's report and deposition unquestionably show Freeman thoroughly and appropriately follow this accepted methodology.

Further, Freeman's testimony and opinions are not cumulative to that of Plaintiff's orthopedic surgeon, Dr. Graves. Freeman's opinions regarding injury causation are offered in the field of accident reconstruction, biomechanics and epidemiology and are being offered to rebut the testimony of Wood. Should this Court find that Freeman's opinions regarding injury causation are cumulative, then this Court should also find that the opinions of Defendant's expert, Wood, are cumulative. The Defendant hired Dr. Mark Torke, an orthopedic surgeon, to conduct a compulsory medical examination. Dr. Torke has opined that Plaintiff did not sustain any permanent injury from the subject collision, and did not sustain any injury to her left shoulder as a result of the collision. Therefore, if we follow the Defendant's argument, then any testimony regarding injury causation from their biomechanical expert, Wood, would necessarily be cumulative to their CME doctor.

As mentioned at earlier, Freeman will be offering testimony and opinions for the purpose rebutting the testimony of Defendant's expert Wood. Plaintiff's Motion to Exclude the Testimony of Wood thoroughly discusses the shortcomings of Wood's work in this matter. Freeman will be part of the way for Plaintiff to show the jury the flaws in Wood's analysis and opinions. Further, the statistical component of Freeman's analysis would certainly not mislead anyone. The statistical component is based off scientific data and will be helpful for the jury to consider the chances of Plaintiff sustaining these injuries due to some reason other than the collision that is the subject of this litigation. In other words, the statistical analysis will assist the jury in determining whether to believe or disbelieve Wood's opinion that Plaintiff did not sustain an injury in this collision. This area of testimony involves data and calculations that is well beyond the knowledge of the average lay person. The entirety of Freeman's methodology and opinions will be helpful to the finder of fact

in this matter.  See Taylor order from October 24, 2019 (United States Magistrate Judge Alicia Otazo-Reyes stated "Dr. Freeman's expert opinion will be helpful to the finder of fact in this case[.]") As mentioned earlier, the Defendant can explore the issues raised in their Motion on cross examination, but the issues raised are not grounds for exclusion,

Therefore, this Court should deny Defendant's Motion in Limine Paragraph 2 and 3 for the above stated reasons.

WHEREFORE, Plaintiff would respectfully ask this Honorable Court to enter an order denying Defendant's Motion in Limine. However, should this Court consider granting Defendant's Motion, then Plaintiff would request an evidentiary hearing regarding the same.

I HEREBY CERTIFY that the foregoing has been filed with the US Direct Court and a true and correct copy has been furnished by Electronic Mail to: **THOMAS "KEVIN" KNIGHT, ESQ. AND CONNOR KELLY, ESQ.,** Kknight@DSKLawGroup.com ; Elamb@DSKLawGroup.com; CSKPleadings@DSLGroupLaw.com, on this the 29th day of October, 2019.

> **TANNEY, GRIFFITH & BRESLER, P.A.**
> Attorneys for Plaintiff
> 29605 U.S. 19 North, Suite 210
> Clearwater, FL 33761
> (727) 781-8817
> SPN No.  00659921
> Fla. Bar No.  0629073
>
> SERVICE DESIGNATIONS:
> Primary:  tg@tanneygriffithlaw.com
> Secondary:  stacy@tanneygriffithlaw.com
>
> By:     /s/ Tony Griffith
>      TONY GRIFFITH, ESQ.